NELLIE MASON

*v.*

CARLETON P: MASON.

[Decided March 11th, 1905.]

Petitioner, a resident of New York, where she was employed, and also where her mother resided, was deserted by her husband there in 1891. She continued to live in New York for eleven years, when she went to New Jersey, and boarded with a friend of her mother's; retaining her position in New York, and living in New Jersey at night; spending her Sundays and holidays with her mother, in New York. She testified that she had endeavored unsuccessfully to induce her mother to move to New Jersey, and that she did not come to New Jersey for the purpose of obtaining a divorce, but to be nearer her work. There was no evidence that she had made any friends or acquaintances in New Jersey during her two years' residence, on the expiration of which she brought suit for divorce on the ground of desertion, which she could not have obtained in New York.—*Held*, insufficient to establish that petitioner was a *bona fide* resident of the state, sufficient to entitle her to a decree.

On petition for divorce.

*Mr. Isaac F. Goldenhorn,* for the petitioner.

STEVENSON, V. C.

In the above-stated *ex parte* divorce case the master reports in favor of a decree divorcing the petitioner from the defendant on the ground of desertion. After examining the depositions sufficiently to perceive that the question of the jurisdiction of this court over the matrimonial status of the petitioner was presented, I gave counsel for the petitioner an opportunity to argue his case, and have been aided by such argument.

My conclusion is that the matrimonial status of the petitioner, the *res,* is not subject to the jurisdiction of the court of chancery of New Jersey, because the proofs do not show that the petitioner has for two years prior to the filing of her petition maintained a *bona fide* residence in New Jersey *animo manendi.*

The petitioner is thirty-five years of age and the defendant is forty years of age. They were married in the city of Brooklyn, in the State of New York, in 1887, where apparently both the parties were domiciled. They lived together as husband and wife in Brooklyn until January 10th, 1891, when the defendant deserted the petitioner. I think the master is fully warranted in reporting that the desertion of the defendant was without excuse; that the desertion of the defendant was willful, continued and obstinate, and resulted indirectly from his drunkenness and idleness. I think, also, that the proofs compel the inference that, assuming that the defendant is still alive, his willful, continued and obstinate desertion has continued during the period up to the filing of the bill, during which the petitioner has been living in New Jersey. It is quite evident that if the defendant, at any time during the two years prior to the filing of the petition, which is the period of desertion upon which the petitioner must rely as her cause of divorce, had repented of his violation of duty to the petitioner, and had desired to return to her, he could have readily found out where she was. This is not a case where the spouse, deserted and abandoned for years in another state, comes into New Jersey and resides here for two years, practically in concealment, without giving the deserting spouse an opportunity to repent and return.

Coming now to the question of jurisdiction, the following are the important facts:

The petitioner, the wife, being deserted in January, 1891, returned to her mother's house, in Brooklyn, and resided there, at the place of her original domicile and of her matrimonial domicile, until January 2d, 1902, a period of eleven years. On the last-mentioned day the petitioner established herself in Jersey City, in the house of Mrs. Elizabeth Watt, apparently a reputable citizen of New Jersey, a permanent resident and owner of the house where she lived, and where the petitioner was received as a boarder. Mrs. Watt was an old friend of the petitioner's mother. The petitioner, at the time of her alleged change of residence, was employed as a stenographer at the corner of Broadway and Maiden lane, New York City, earning $15 a week and supporting herself. Her petition for divorce was veri-

fied by her on January 9th, 1904, seven days after the expiration of the necessary two years, and was filed on January 13th, 1904.

This is an "emigrant case." The petitioner comes from New York, a state in which desertion is not a ground for absolute divorce, after eleven years of continuous desertion on the part of her husband, and then promptly at the end of the statutory period of two years applies to the court of chancery of New Jersey for an absolute divorce. She is entitled to such a divorce under the facts proved in this case, provided this court has jurisdiction of her matrimonial status—provided, in other words, she has not come into the state for the mere purpose of obtaining a divorce or for the accomplishment of any other transient purpose, but has come and has resided here *animo manendi.* It is now the established law of the state that the accomplishment of a transient purpose, such as the procuring of a divorce, is not inconsistent with a further purpose to remain a permanent resident of the state. *Wallace* v. *Wallace,* 65 *N. J. Eq.* (*20 Dick.*) *359; Hunter* v. *Hunter,* 64 *N. J. Eq.* (*19 Dick.*) *277, 281.*

The facts which I have stated in this case, in my opinion, establish a presumption that the petitioner has been boarding in Jersey City for two years prior to the commencement of her suit for the purpose of establishing a residence sufficient to enable her to obtain a divorce—to obtain the relief which is denied to her by the laws of the State of New York, from which state she came, and that the contemplated duration of her residence in New Jersey is measured by the purpose with which such residence has been maintained. This presumption, however, can be overcome by the requisite amount of evidence. *Hunter* v. *Hunter, supra.*

If the petitioner had any other or further purpose in coming into New Jersey—if she has been residing in New Jersey *animo' manendi* since she came to board with Mrs. Watt—it is incumbent upon her to make proof of that fact. In the case of *Grover* v. *Grover,* 63 *N. J. Eq.* (*18 Dick.*) *771,* I held that the presumption against the permanency of the petitioner's residence in a case like this could not be overcome solely by his own "testimony in regard to his motives, purposes and intentions." The court of errors and appeals in that case declared that it was not "pre-

pared either to concur in or dissent from" the rule of evidence above set forth. *63 N. J. Eq.* (*18 Dick.*) *796.* See *Hunter* v. *Hunter, supra, pp. 282 et seq.*

The evidence which goes to throw light upon the real character of the petitioner's residence in New Jersey, so far from overcoming the presumption to which I have referred, in my judgment greatly strengthens that presumption. It does not appear that the petitioner has established any ties which bind her to the State of New Jersey. Her mother continues to reside in Brooklyn. Although the petitioner has endeavored, as she testifies, to induce her mother to come to New Jersey, so far her efforts have failed. It appears that the petitioner's mother owns some real estate in New Jersey but not in Jersey City. The petitioner remains in New Jersey from Monday afternoon or evening of each week until Saturday morning. For two days and a half of each week she lives in the State of New York. She spends her Sundays and holidays with her mother in Brooklyn. So far as appears, all her friends and associates reside in New York or Brooklyn. If she attends church on Sunday it must be in Brooklyn. The picture of this woman's life in New Jersey for the two years in question, presents her as crossing the Hudson river to her boarding-house in the afternoon or evening, sleeping in Jersey City and recrossing the Hudson river in the morning to her place of employment in New York. Practically all her leisure time, which in the case of every person employed as she is, largely consists of Sundays and holidays, is spent at her old home, her original domicile in the city of Brooklyn. There is no evidence that the petitioner has formed the acquaintance of a single individual in the State of New Jersey since she came here in January, 1902.

When we come to the testimony of the petitioner, which is an important part of her case, within the direct ruling of the court of errors and appeals in the case of *Tracy* v. *Tracy, 62 N. J. Eq.* (*17 Dick.*) *807,* we find that she denies that she came into the State of New Jersey for the purpose of getting a divorce, but she voluntarily adds that she came for the purpose of getting near her business. She elsewhere states that she thought she would "take a place in Jersey and board" so as to make it more

convenient for her to get to her work—that it used to take her nearly an hour to get to her work from her mother's house, while it takes a little less than half an hour to get there from her present boarding-house. The only testimony of the complainant, which bears directly on the question whether she is living in New Jersey *animo manendi,* is contained in the following question and answer:

"*Q.* Do you intend to live in Jersey, or did you come here to get a divorce and then go back to Brooklyn?
"*A.* No, I intend to live here; it is part of my work."

The conscience of the petitioner has not been directly sounded on the question whether she has been living in New Jersey with the *bona fide* intention of remaining permanently a resident, whether she obtains a divorce or not. Giving her testimony the greatest effect which can be attributed to it, I think it amounts to a statement on her part that she is boarding in New Jersey, because as long as she is employed where she now is, in New York City, it is more convenient for her to sleep five nights in the week and take about half her meals in Jersey City.

In my judgment, in the class of cases to which this present case belongs, it is incumbent upon the petitioner to exhibit to the court some picture of her life in New Jersey—present some evidence, not only by her own oath, but by the oath of other witnesses, of facts which tend to corroborate her claim that she has resided permanently or indefinitely in New Jersey.

In this case the petitioner has not even sworn directly that she has lived in New Jersey for two years prior to the commencement of her suit with an indefinite purpose to reside permanently in the state, and she has not testified to a single fact about her life from day to day which tends to weaken the presumption against her case to which I have referred. The only witness to the petitioner's life in New Jersey other than herself, Mrs. Watt, also fails to state a single fact which indicates that the petitioner is anything more than a transient boarder in Jersey City. The petitioner admits that sometimes she remains with her mother for two or three days at a time, and that

in the summer, when she has a vacation of two weeks, she spends that vacation at her mother's house in Brooklyn.

. If the petitioner, upon the depositions taken in this case, is entitled to a divorce under our law, I see no reason why any woman married in New York, deserted by her husband in New York, and maintaining herself by her labor in a state of separation from her husband in New York, may not, whenever she wishes to get an absolute divorce from her husband, which the laws of New York deny her, board for five days in the week in Jersey City or Hoboken during two years and then obtain a divorce under the laws of the State of New Jersey, although her interests in life remain located in the State of New York, and it does not appear that she has even become a permanent boarder in New Jersey.

The class of cases to which the present one belongs appears to be constantly increasing, and certainly calls for the utmost care and the closest scrutiny to prevent the fraudulent use of our divorce laws by citizens of other states, and especially by citizens of the State of New York. New York is the only state near us in which an absolute divorce cannot be obtained on the ground of desertion. It is a significant fact that the petitioners in these suspicious cases—these emigrants from other states—who so promptly apply for divorce on the ground of desertion, commenced in the state from which they come, almost uniformly are from the State of New York. Deserted spouses in Pennsylvania and Connecticut and other states near by, except New York, seem to be able to redress their matrimonial grievances at the place where the desertion first occurred; at any rate they very rarely, after establishing a residence in New Jersey, seek in this court a divorce on account of the desertion which took place in the state from which they come.

If we examine the last twelve cases which appear in our reports, in which application was made to this court for a divorce on the ground of desertion, by a spouse who had moved into New Jersey from a foreign domicile, after the alleged desertion in fact began, we find that in eleven of these cases the emigrant came from New York. *Tracy* v. *Tracy, 60 N. J. Eq. (15 Dick.) 25; 62 N. J. Eq. (17 Dick.) 807; Pohlman* v.

*Pohlman, 60 N. J. Eq. (15 Dick.) 28; McGean* v. *McGean, 60 N. J. Eq. (15 Dick.) 21; 63 N. J. Eq. (18 Dick.) 285; Wallace* v. *Wallace, 62 N. J. Eq. (17 Dick.) 509; 65 N. J. Eq. (20 Dick.) 359; Grover* v. *Grover, 63 N. J. Eq. (18 Dick.) 771, 796; Hunter* v. *Hunter, 64 N. J. Eq. (19 Dick.) 277; Gunther* v. *Gunther, 57 Atl. Rep. 1015; Cotter* v. *Cotter, 58 Atl. Rep. 73; Richardson* v. *Richardson, 67 N. J. Eq. 437; Currier* v. *Currier, 59 Atl. Rep. 4; Brand* v. *Brand, 59 Atl. Rep. 570.* In the remaining case, *Sweeney* v. *Sweeney, 62 N. J. Eq. (17 Dick.) 357,* the matrimonial domicile was in Cuba.

But the reported cases constitute only a small percentage of the total number of this class. I think it is safe to estimate that on the average at least once a week an emigrant from the State of New York, after residing in some way in New Jersey for a period of two years and over, applies to this court for an absolute divorce on the ground of a desertion which he charges against his absent spouse, and which, if there was any desertion, in fact commenced at the matrimonial domicile in the State of New York. In many cases no doubt there has been a *bona fide* permanent residence established in New Jersey, whether for the purpose of obtaining the desired matrimonial relief or not, but in many cases, in my opinion, a gross fraud is attempted upon our laws. The detection of the fraud in many cases would seem to be difficult if not impossible. Thousands of persons formerly domiciled and doing business in New York now reside *bona fide* permanently in New Jersey, while they continue with all their business interests in New York and spend a large part of their time in that state. These *bona fide* changes of residence are constantly occurring, and this fact increases the difficulty of the court in getting at the truth in a particular case.. What aids the court most is a full disclosure of all the circumstances which have attended and characterized the residence under investigation. This aid, it seems to me, the applicant for divorce in this class of cases is bound to render in the most ample manner.

It has been held to be a safe rule, founded in public policy and good morals, that the jurisdiction of the court of chancery in the class of divorce cases to which the present one belongs,

should in every case be clearly proved, and where a serious doubt exists as to the *bona fides* of the petitioner's residence in New Jersey jurisdiction should not be exercised. *Firth* v. *Firth*, *50 N. J. Eq. (5 Dick.) 137; Sweeney* v. *Sweeney, 62 N. J. Eq. (17 Dick.) 357, 359.*

In this case, I think more than a serious doubt exists in regard to the character of the petitioner's residence in New Jersey during the two years during which she has boarded in Jersey City. In my opinion the correct inference from the evidence is that such residence has not been maintained *animo manendi*. The petition, therefore, must be dismissed.